IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL MORRIS,

      Plaintiff,

v.

NEW LISBON CORRECTIONAL
INSTITTUION, et al.

      Defendants.

ORDER

Case No.   15-cv-564-wmc

Plaintiff Michael Morris brings this lawsuit under 42 U.S.C. § 1983, and seeks leave to proceed under the *in forma pauperis* statute, 28 U.S.C. § 1915, on his claims that numerous defendants violated his constitutional rights.  Normally, the court would proceed to screen his complaint pursuant to 28 U.S.C. § 1915A.[1]  However, Morris alleges numerous claims against different defendants for unrelated conduct in violation of Federal Rule of Civil Procedure 20.  For reasons explained in more detail below, this requires that Morris identify which of his claims he wishes to pursue in this case, as well as decide whether he wants to pursue the other claims separately.  Alternatively, plaintiff may voluntarily dismiss the other claims without prejudice to his bringing them at another time provided the applicable statute of limitations has not expired.  Once Morris has made his selection, the court will screen those claims under 28 U.S.C. § 1915A.

---

[1] Since filing his original complaint, plaintiff filed an Amended Complaint, which the court will treat as the operative pleading.  (Dkt. #17.)

ALLEGATIONS OF FACT[2]

## I.    Parties

Plaintiff is currently incarcerated at the Wisconsin Secure Program Facility ("WSPF"), in Boscobel, Wisconsin, although some of the allegations in his complaint took place while he was incarcerated at the New Lisbon Correctional Institution ("NLCI").  His amended complaint names 31 defendants, who the court will group as NLCI, WSPF and Madison.

In addition to the institution itself, the NLCI defendants include:  Timothy Duoma, the warden; Timothy Thomas, the deputy warden; Ms. Kennedy, the school administrator; Brendon Ingenthron, an inmate complaint examiner ("ICE"); John Doe, an ICE supervisor; and Mr. Davenport and Ms. Weiss, who both work in NLCI's business office.  Again in addition to the institution, the WSPF defendants include: Gary Boughton, the warden; Mr. Brown and Ms. Ray, both ICE; Ms. Dickman, Ms. Sutter and Ms. Dressler from WSPF's business office; correctional officers Jane Doe, Harn, A. Mink, J. Strasser and C. Morrison; Lieutenant Shannon Sharpe; Ms. Payne from the warden's office; and Mr. Boardman, an inmate advocate.  The Madison defendants include:  Mr. Parisi; John or Jane Doe; Cindy O'Donnell; Charles Factor; and A. Boatright.

---

[2] In addressing any pro se litigant's complaint, the court must read the allegations generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).  For purposes of this order, the court assumes the facts above consistent with the allegations in Morris's complaint.

II.     **Overview of Claims**

A.     **NLCI Claims**

Generally speaking, Morris alleges that the NLCI defendants violated his rights to an education and to due process, and also retaliated against him for attempting to appeal two adverse inmate complaint decisions.  When Morris arrived at NLCI, he learned that inmates need to either have a general education diploma ("GED") or high school equivalency diploma ("HSED"), and he would have to attend classes.  Since Morris did not want to do so, he spoke to Ms. Kennedy, who told him that the warden may permit exceptions to the requirement that inmates take classes.  After Morris responded that he had a "sex case" and would not have time for classes, Kennedy allegedly told him to hold off asking the warden for an exception and that she would get back to him.  When Kennedy did not get back to him, however, Morris filed a complaint against her, which was dismissed after Kennedy told the investigator she never told Morris that there were exceptions to the education requirement.

Eventually, Morris agreed to take classes, but when he appeared for class he allegedly learned that most of the other students were being *paid* to attend.  Morris then left, received a conduct report and was removed from classes.  Morris later filed two inmate complaints, Nos. 2013-22848 and 2013-22849, about these incidents, which were dismissed by Thomas and Ingenthron.  Apparently anticipating denial of those complaints, Morris also requested two legal loans so that he could appeal those decisions, as well as file an "imminent danger lawsuit."  However, Morris claims that his loan was delayed by Mr. Davenport, Ms. Weiss, and a John or Jane Doe, which caused him to miss

the deadline to file his appeal.  By virtue of these actions, Morris claims that these defendants violated his Fourteenth Amendment right to an education and his Due Process Clause right to pursue his inmate complaints.

Morris also alleges that after these incidents, certain NLCI defendants retaliated against him by transferring him to WSPF.  In December of 2013, following his request for the legal loans he needed to appeal his inmate complaint decisions, Morris learned that Ms. Dennison had prepared paperwork for his transfer to WSPF.  Initially, after Morris got in trouble for calling Ms. Kennedy a "bitch," Morris told his social worker that he was willing to be transferred from NLCI to WSPF.  When he learned that the papers had been prepared, however, Morris responded that he changed his mind and did not want to go to WSPF.  As a result, he refused to sign the paperwork requesting the transfer.  Nevertheless, despite presenting no security risk at NLCI, Morris eventually was transferred, which he now alleges was in retaliation for his inmate complaints.

### B.    WSPF Claims

Morris further alleges that the WSPF defendants violated his First, Eighth and Fourteenth Amendment rights by (1) mishandling his inmate complaints, (2) an officer twisting his handcuffed hand and pushing him against a cell door, and (3) restricting his use of legal resources.

### 1.    Inmate Complaints and Conduct Reports

Morris claims that several WSPF defendants curbed his ability to appeal a case he lost in Juneau County Circuit Court and inmate complaints that had been dismissed while housed at NLCI.  Generally, Morris challenges the limitations that DAI Policy

#309.51(III)D placed on his ability to pursue appeals.  This policy was adopted under Wis. Stat. § 301.328, which provides that legal loans to inmates are limited to $100 annually, but that if an inmate repays part of the loan during the year, he can re-borrow that amount without it counting against the $100 limit.  Section 301.328(1m) also states that "No prisoner may receive a litigation loan in any amount until he or she has repaid a prior loan in full or has made arrangements for repayment."

Despite the language of the statute, Morris alleges that while at WSPF, DAI Policy #309.51(III)D was invoked to impose a legal loan maximum of $50 annually on any inmate with outstanding loans.  As he was denied loans because he carries a legal loan balance, Morris further claims that this policy violated his right to access the courts. In particular, Morris claims that in mid-2014, he was told that he reached his legal loan limit and could not pursue his inmate complaint appeals or a postconviction motion in the Wisconsin state courts.  Although many of the allegations with respect to this claim are vague, Morris names Boughton, Brown, Ray, Sutter, Dickman, O'Donnell and Factor as defendants who were personally involved in the denial of his appeal rights.

In addition, Morris alleges that when he arrived at WSPF, he was separated from his paperwork until January 9, 2014.  Morris then attempted to follow up with WSPF about how NLCI handled his inmate complaint appeals, but apparently no one at WSPF agreed that his inmate complaints were incorrectly dismissed for failing to follow the proper procedures for pursuing his appeal.  Accordingly, in August of 2014, Morris filed inmate complaint number 2014-15051, claiming that WSPF's staff refused to acknowledge that he should have been able to pursue his appeal.

Morris further complains that his complaints were generally mishandled at WSPF. For example, when housed at NLCI and Waupun, Morris alleges that staff would send inmates copies of their complaints, but he learned that this does not occur at WSPF. Morris claims that lacking funds to make copies of the complaints before sending them to the warden, he was unable to track his complaints.  More specifically, this apparently thwarted his ability to pursue an appeal of inmate complaint 2014-15051.  Although Morris requested his paperwork back from the warden's office, Ms. Payne responded simply that the paperwork would be returned to him when the warden was done reviewing it.  Ultimately, this complaint was dismissed and his appeal was unsuccessful. Morris alleges that defendants Boughton, Sutter, Dickman, Brown, Ray, Gourlie and Boatwright were all involved in decisions related to his inmate complaint, allegedly in violation of his first amendment and due process rights.

Morris similarly alleges that in August of 2015, he filed inmate complaint 2015-16105, because he was not receiving medication and actually received a faulty prescription following an eye examination.  This complaint was dismissed apparently because Morris refused to finish the eye examination, although Morris disagreed and appealed that decision, it, too, was dismissed by defendants Gourlie and Boatwright.

Finally, Morris complains that his due process rights were violated with respect to a conduct report received in April of 2015.  After getting into a fight with his cellmate, Morris received a conduct report and was told that Sergeant Boardman would serve as his advocate.  Morris now appears to claim that he did not receive adequate process or representation because he was not able to present witness testimony at the conduct

6

report hearing as he desired and his cellmate received less of a punishment than he did. Morris does not provide specifics about what each named defendant did with respect to this conduct report, but claims that Ray, Brown, Boughton, Boatright and O'Donnell are all culpable.

### 2.   Force used when Morris was Transferred to Observation

Morris next complains about an incident that took place on August 22, 2014, which he alleges constituted excessive force.   Morris had requested to be placed on observation status.   Cuffed while being transported to observation, the officer moving him said something to him as he entered his cell.   After Morris responded that he could not hear her, the officer then twisted his cuff and pushed his face against the door of the cell.   Morris claims that two hours later his hand was very swollen, and there appeared to be burst blood vessels on the top of his hand and wrist.   Morris requested that photos be taken at the time, but a nurse refused and told him that she did not see any swelling or bruising.   In the days that followed, when Morris saw that bruises had developed, he made follow-up requests for photos to be taken, which were also refused.   Morris claims that these events involved correctional officer Jane Doe and Lieutenant Sharpe and violated his Eighth Amendment rights.

### 3.   Access to Legal Materials

Finally, Morris claims that he was denied adequate legal materials.   On April 25, 2015, a correctional officer seized Morris's legal materials that he brought with him to the chow hall.   Morris claims that he did not know that bringing those materials was against prison policy.   Additionally, learning that the prison provides advocates, Morris

requested one, but was then dissatisfied that his advocate could only help him for an hour and a half per week. Apparently that advocate also told Morris that he could not review all of his transcripts and police reports or prepare a motion for him. Based on each of these restrictions, Morris asserts that WSPF's law library and legal materials are inadequate to protect his right to meaningful access to the court. He seeks an injunction requiring WSPF to find an alternative way for inmates to access legal materials.

OPINION

## I.  Federal Rule of Civil Procedure 20

The Seventh Circuit has instructed district courts to apply the permissive joinder rule of Federal Rule of Civil Procedure 20 to complaints asserting multiple claims against multiple defendants. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (stating that a "buckshot complaint" raising unrelated claims against unrelated defendants "should be rejected" by the district court). Rule 20 permits plaintiffs to join multiple defendants in a lawsuit only if:  (1) at least one claim against each defendant arises out of the same transaction or series of transactions; and (2) there is a question of law or fact common to all of the defendants. Fed. R. Civ. P. 20(a)(2); *see George*, 507 F.3d at 607. As presently pleaded, plaintiff's hodgepodge of alleged events spanning three years and involving over 30 defendants at two different institutions and multiple legal theories does not begin to meet this test. While Morris asserts claims against several different, core groups of defendants linked by different occurrences or series of occurrences, even construing his

8

legal claims very generously, they must be divided into *at least* four, separate lawsuits to satisfy Rule 20:

**Lawsuit #1:  Right to Education, Due Process, Access to Courts and Retaliation Claims from Inmate Complaints Against NLCI Defendants**

- Morris complained about how defendant Kennedy handled his request to be exempt from NLCI's education requirement, to no avail;

- Morris filed inmate complaints 2013-22848 and 2013-22849 related to his requests, which were dismissed by defendants Thomas and Ingenthron;

- Defendants Davenport, Weiss and John or Jane Doe delayed his legal loan to appeal those dismissals due to (allegedly unconstitutional) application of DAI Policy #309.51,III.D, and Morris missed his appeal deadline; and

- Morris was transferred from NLCI to WSPF against his will in retaliation for his attempts to appeal his inmate complaints.

**Lawsuit #2:  Due Process and First Amendment Claims Against WSPF Defendants Related to Conduct Reports and Inmate Complaints**

- Morris's inmate complaint 2014-15051, which complained about how NLCI handled his inmate complaints, was wrongfully dismissed by WSPF's staff, including defendants Payne, Boughton, Sutter, Dickman, Brown, Ray, Gourlie and Boatwright;

- Morris filed inmate complaint 2015-16105, complaining about how an eye examination was handled, which was apparently dismissed by defendants Gourlie and Boatright; and

- Morris received a conduct report after a fight with his cellmate, and he was dissatisfied with defendant Boatright's defense as his assigned advocate.

**Lawsuit #3:  Excessive Force Claim Against Jane Doe and Sharpe**

- When Morris was being moved to observation, defendant Jane Doe twisted his handcuffed hand and pushed him against a cell door, with defendant Sharpe present.

**Lawsuit #4:   Access to Court Claim Related to the Legal Materials Available at WSPF**

- In 2015, restrictions on Morris's use of legal advocates provided by WSPF, as well as his use of the legal materials available in the law library allegedly violated his right to access the courts.

Because these four groups of claims concern separate transactions involving different core groups of defendants, Rule 20 precludes their being brought in a single lawsuit.   Under *George*, the court may assign the filing fee Morris owes to any of the four lawsuits, but he will have to choose which of the lawsuits to pursue as Case No. 15-cv-564.

For the other lawsuits, Morris must make a choice.   If he chooses to pursue them separately, Morris must file separate complaints for each lawsuit *and* pay a separate filing fee for each, with the understanding that he will be subject to a separate strike for each lawsuit ultimately dismissed as legally meritless, which is a distinct possibility with respect to at least some of his claims.[3]  Alternatively, Morris may choose to dismiss one or more of the other three lawsuits voluntarily.   If he chooses this route, he will not owe any additional filing fees or face any potential strikes for the dismissed lawsuit(s).   Any lawsuit Morris dismisses voluntarily would also be dismissed without prejudice, so he may be able to bring it at another time provided the applicable statute of limitation has not expired.

Morris should be aware that because it is unclear which lawsuit he wants to pursue, the court has *not* assessed the possible merits of any of his four lawsuits.   Once

---

[3] Except in narrow circumstances, a prisoner who receives three strikes is not permitted to proceed in new lawsuits unless he first pays the full filing fee.  *See* 28 U.S.C. § 1915(g).

Morris identifies which lawsuit he wants to pursue under this case number, the court will screen it as required under 28 U.S.C. § 1915A.  Because Morris faces a filing fee and possible strike for each lawsuit he pursues, he should carefully consider the merits and relative importance of each before deciding how he wishes to proceed.

## ORDER

IT IS ORDERED that:

1) By no later than **January 31, 2017,** Plaintiff Michael Morris must identify for the court which one of the lawsuits identified in this opinion he wishes to pursue under the case number assigned to his complaint;

2) By no later than **January 31, 2017,** Morris must also inform the court whether he wishes to continue to prosecute any of his other claims as separate lawsuits or withdraw them voluntarily.  If Morris dismisses these claims voluntarily, he will owe no further filing fee.  If Morris advises the court he intends to prosecute one or more of these claims in a separate lawsuit, he will (1) owe a separate $350 filing fee for each new lawsuit and (2) need to file a separate complaint setting forth his claims; and

3) If plaintiff fails to respond to this order by **February 7, 2017** then this case will be subject to dismissal by the presiding judge based on plaintiff's failure to prosecute it.

Entered this 9th day of January, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

11