IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL MORRIS,

    Plaintiff,

v.

WISCONSIN DEPARTMENT OF
CORRECTIONS, et al.

    Defendants.

OPINION & ORDER

Case No. 15-cv-564-wmc

*Pro se* plaintiff Michael Morris is proceeding in this lawsuit on a claim that defendants Timothy Thomas, Charles Devendorf, Branden Ingenthron, Timothy Douma, Rebecca Kennedy, and Sally Wess retaliated against him in violation of the First Amendment by denying his grievances and loan requests, as well as transferring him from the New Lisbon Correctional Institution ("NLCI") to the Wisconsin Secure Program Facility ("WSPF").[1] Currently before the court are numerous motions filed by Morris (dkts. ##47, 48, 57, 58, 60, 67, 69, 73, 76, 77, 78, 93, 95) and the defendants' motion for summary judgment on exhaustion grounds (dkt. #82). For the following reasons, all but one of plaintiff's motions will be denied, defendants' motion will be granted, and this case will be dismissed without prejudice.

---

[1] While ECF identifies defendants Davenport, Kennedy and Weiss, based on defendants' answer to plaintiff's second amended complaint, their full names appear to be "Charles Devendorf," "Rebecca Kennedy," and "Sally Wess." (Dkt. #80 at 1; dkt. #71 at 1.) There does appears to be no dispute that these are, in fact, defendants' actual names. In fairness, there appears to be some continuing disagreement as to the spelling of Mr. Devendorf's name, with plaintiff continuing to spell it as "Davenport" (*see* dkt. #79), although plaintiff even uses alternative spellings within documents (*id.*). In such cases, the court generally defers to counsel's spelling of his client's name, as it does here.

1

## MORRIS'S PENDING MOTIONS

The court addresses Morris's pending motions by category. *First*, Morris's motion for default judgment against the defendants (dkt. #48) will be denied since defendants filed their answer within the 40-day deadline set by the court (dkt. #46).

*Second*, four of Morris's motions seek reconsideration of multiple aspects of the screening order, but the court sees no basis to alter its conclusions. (Dkts. ##47, 57, 67, 73.) As an initial matter, Morris complains that the court denied him leave to proceed on a due process claim related to his education at NLCI. (Dkt. #57.) Yet he fails to provide any reason for the court to reconsider its conclusion that Morris has no liberty interest in either attending or not attending classes at NLCI, nor why he should have been allowed to pursue a grievance related to his experiences with the education department. (*See* Order (dkt. #46) at 5.) Morris next complains that the court denied him leave to bring a claim for denial of access to courts based on misconstrued facts. The court dismissed this claim because Morris was not attempting to challenge his sentence or conditions of confinement.

Now, Morris asserts that he *was* trying to challenge his conditions of confinement, claiming that he had alleged his inability to pursue grievances and secure a legal loan, which thwarted his ability to pursue a temporary restraining order barring his being force-fed. Morris specifically adds that he commenced a lawsuit related to force feeding, but abandoned it because he was unable to exhaust his administrative remedies. However, Morris also attached documents related to that lawsuit, which show that Morris filed an action in Juneau County. While it was dismissed, the reason given was not failure to exhaust; rather, the lawsuit was deemed moot because Morris was transferred to another facility, a conclusion the state court judge only reached after receiving and reviewing all of Morris's filings, which included his

petition, an addendum, letters and copies of rejected grievances. (*See* dkt. #47-1 at 20-30.) Even construing Morris's access to courts claim differently, therefore, the court sees no basis upon which to reconsider its dismissal of this claim.

*Third*, three of Morris's motions repeat his earlier complaints seeking to receive legal loans even though he has already hit his maximum allotment for the year. (Dkts. ##58, 69, 77, 93.) As the court has explained multiple times to Morris, there is no evidence that Morris's ability to litigate this matter has been impeded by his having met or exceeded the statutory limits of legal loans. The same still holds true. Although Morris continues to insist that he needs an additional legal loan so that he can obtain writing paper and pens, the fact remains that he continues to file numerous, multi-page motions and other documents with the court, and that his written submissions continue to be legible, suggesting that he remains largely, if not wholly, unimpeded from litigating this matter whether he receives additional legal loans or not. For these reasons, and those previously explained to Morris in the court's orders, these three motions will also be denied.

*Fourth*, Morris filed a motion for sanctions (dkt. #60), complaining that the Clerk of Court refused to submit the motions he has filed in his appeal from another one of his lawsuits before this court, Case No. 15-cv-712. Since the record shows this assertion is simply untrue, that motion will similarly be denied. The Clerk of Court has docketed Morris's numerous, post-judgment motions in case '712, all of which are currently under advisement with the court and will be resolved shortly. Morris should realize by now that by virtue of him filing many lawsuits, and within those lawsuits numerous, often repetitive and meritless, motions, resolving his requests takes time. While the court endeavors to resolve Morris's most urgent and potentially meritorious motions first, all of Morris's issues are addressed in turn, albeit not to

his satisfaction. Therefore, to the extent that Morris would like any future lawsuits or filings to reach resolution sooner, he may consider limiting his filings to those necessary to litigate his claim.

*Fifth*, Morris has filed several motions regarding his deadline to identify the Doe defendant. (Dkts. ##67, 69, 73, 76.) Amending that deadline is unnecessary, as Doe has now been identified as Charles Devendorf (*see* dkt. #71), who is already named as a defendant in this lawsuit. Accordingly, these motions will be denied as moot.

*Finally*, Morris filed a motion seeking the court's assurance that it is receiving his filings. (Dkt. #78.) The court will grant that motion to the extent that (1) this court receives and reviews all of his filings submitted properly to the court; and (2) attached to this order is a complete list of the filings in this case. That said, it is not a function of this court to ensure all parties' filings are made as intended. In the future, therefore, if Morris has concerns about whether certain filings have made it into the record of a specific case, it remains his responsibility to request assurances or docket sheets directly from the Clerk of Court.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, a prisoner must also "properly take each step within the administrative process" to comply with § 1997e(a). *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes following instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and filing all necessary appeals, *Burrell v.*

4

*Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005), that are "in the place . . . at the time, [as] the [institution's] administrative rules require." *Pozo*, 286 F.3d at 1025.

The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006); *see Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement"). If a prisoner fails to exhaust administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

To exhaust state administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code § DOC 310. Under these provisions, prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). The complaint must "[c]ontain only one issue per complaint, and shall clearly identify the issue." *Id.* § 310.09(e). If the institution complaint examiner rejects a grievance for procedural reasons without addressing the merits, an inmate may appeal the rejection. *Id.* § 310.11(6). If the complaint is not rejected, the institution examiner makes a recommendation to the reviewing authority as to how the complaint should be resolved. *Id.* § 310.11(6). The offender complaint is then decided by the appropriate reviewing authority, whose decision can be appealed by the inmate to a *correctional* complaint examiner ("corrections examiner"). *Id.* §§ 310.12, 310.13. The corrections

5

examiner then makes a recommendation to the Secretary of the Department of Corrections, who takes final action. *Id.* §§ 310.13, 310.14.

Defendants submit the affidavit of Inmate Complaint Examiner ("ICE") Ellen Ray, who authenticated copies of Morris's inmate complaint history report, as well as twelve inmate complaints Morris filed between 2013 and 2015. (Ray Decl. (dkt. #83).) Morris's inmate complaint history report shows that between November of 2013 and his December transfer to WSPF, Morris filed six inmate complaints at NLCI, although *none* include allegations that he was being punished in retaliation for filing lawsuits. Rather, Morris: complained about NLCI's education department (NLCI-2013-21549, NLCI-2013-22295, NLCI-2013-22297, and NLCI-2013-23640); alleged that the Education Director (Kennedy) lied to an ICE investigator about his complaints (NLCI-2013-22848); and challenged his medium classification as discriminatory (NLCI-2013-22849).

Then, in Morris's first six months at WSPF, he brought *fifteen* inmate complaints, although again *none* allude to a retaliation-type claim challenging his transfer from NLCI to WSPF, nor how his grievances or legal loan requests were handled. Instead, among them were: multiple claims about his medical care (WSPF-2013-24652, WSPF-2013-24655, WSPF-2014-2681, WSPF-2014-5297, WSPF-2014-6532); an allegation that staff was inappropriately reading his mail (WSPF-2014-638); and several challenges to the ICRS process (WSPF-2014-8904, WSPF-2014-8959, WSPF-2014-10046). In fairness, more than a year later, Morris did file one complaint referencing a retaliatory transfer (WSPF-2015-12210). Even in that instance, however, Morris complained about a 20*15* transfer between housing units at WSPF, having nothing to do with his 20*13* transfer from NLCI to WSPF.

In opposition, Morris offers three explanations to his failure to exhaust.[2] Morris first claims that he was prevented from exhausting his retaliation claim. Morris rightly points out that: prisoners are required to comply with exhaustion procedures that are "available," 42 U.S.C. § 1997e(a); and the grievance process is not available if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016); *Kapa v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[A] remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."). However, Morris does not benefit from his suggested syllogism because the evidence of record does *not* suggest, and thus a reasonable trier of fact could not conclude, that the NLCI or WSPF staff thwarted him from taking advantage of either institution's grievance process. Indeed, Morris offers no evidence as to who specifically prevented him from exhausting a retaliation claim, much less why or how they did so. As such, his vague complaint that staff prevented him from pursuing this claim is simply insufficient to create a factual dispute about whether staff prevented him from pursuing a grievance about his retaliation claim, particularly given that the record is replete with so many examples of his being allowed to do so. *See Schulz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) (summary judgment proper where prisoner failed to set forth specifics about why he was unable to exhaust).

Indeed, the evidence of record suggests that Morris has had nearly unfettered access to the grievance process at both institutions. Between November of 2014 and February of 2015, Morris filed eleven inmate complaints about other issues. In these complaints, Morris named

---

[2] Morris also submits numerous arguments related to claimed errors in the court's screening order, but none of Morris's challenges to the screening order merit additional consideration for the reasons already explained above.

prison administrators and complained specifically about Kennedy, claimed that he was the victim of discrimination, and challenged his medical care. Morris does not explain how he was able to pursue these complaints without fear of recrimination but was somehow simultaneously unable to pursue his retaliation claim. Accordingly, Morris has not created a genuine dispute regarding whether the grievance process was denied him.

Second, Morris argues that "any reasonable person can glean by the facts presented" in his other grievances that he was asserting a retaliation claim. That simply is not the standard for exhaustion. Rather, the DOC's exhaustion procedures require inmates to limit their complaints to one clearly identified issue, thus "alert[ing] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). To accomplish that in the retaliation context, prisoners must identify the protected conduct that provoked the retaliation *and* the retaliatory act. *Lockett v. Goff*, No. 17-cv-93-jdp, 2017 WL 4083594, at *2 (W.D. Wis. Sept. 13, 2017); *Wine v. Pollard*, No. 08-cv-173-bbc, 2008 WL 4379236, at *3 (W.D. Wis. Sept. 23, 2008). Although lengthy, Morris's many grievances between November 2013 and February 2014 never actually used the word "retaliation." More generally, none of Morris's grievances complained that: he was being thwarted from pursuing his grievances; he was being denied legal loans, or he was being transferred because of constitutionally protected conduct. Therefore, his litany of other grievances did not successfully provide prison officials notice and an opportunity to address the retaliation claim he now seeks in this lawsuit.[3]

---

[3] Rather, prison officials were repeatedly made aware of Morris's belief that Kennedy's handling of his education requirements was either wrong or based on a personal animus against him, those complaints were never couched in terms that suggested Kennedy was acting to punish Morris for engaging in protected speech. As such, they were not sufficient to exhaust a First Amendment retaliation claim.

Third, in a recently filed motion to correct the record (dkt. #95), Morris claims that he *did* file a proper inmate complaint about his transfer to WSPF, then appealed it unsuccessfully to the warden (dkt. #95-1). He attaches a copy of an inmate complaint he references as WSPF-2017-32207, which was stamped as received on December 21, 2017.[4] While in that grievance Morris complained about his 2014 transfer to WSPF, Morris fails to provide details about the result of the inmate complaint, whether he appealed the warden's finding, or the results of his appeal. And even assuming that Morris submitted this inmate complaint, defendants correctly point out that dismissal is necessary because Morris needed to exhaust his administrative remedies *before* he filed suit in 2015. *See Flourney v. Schomig*, 152 F. App'x 535, 537-38 (7th Cir. 2005) ("Exhaustion is a prerequisite to bringing suit, so completing the administrative process after the suit is filed cannot overcome an exhaustion defense."). Finally, even setting aside the timing issue, Morris only claims that he appealed this complaint to the warden. He has provided no evidence showing that he actually completed the grievance process by appealing the results of that dismissal to the DOC Secretary, as required by §§ 310.13, 310.14.

Given that he failed to take "all steps prescribed by the prison's grievance system," Morris did not exhaust his claims in this case. *Murray v. Artl*, 189 F. App'x 501, 504 (7th Cir. 2006) (citing *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004)). Accordingly, defendants' motion will be granted, and this case will be dismissed without prejudice for failure to exhaust. *Ford*, 362 F.3d at 401 (dismissal for failure to exhaust is always without prejudice).

---

[4] Morris also vaguely asserts that he *may* have pursued a retaliation complaint in 2014, but submits no evidence to support that assertion, much less genuinely dispute the contradictory inmate complaint history report. *See Williams v. Raemisch*, 545 F. App'x 525, 528 (7th Cir. 2013) ("'speculation may not be used to manufacture a genuine issue of fact'" (quoting *Springer v. Durglinger*, 518 F.3d 479, 484 (7th Cir. 2008))).

ORDER

IT IS ORDERED that:

1) Plaintiff Michael Morris's motions (dkts. ##47, 48, 57, 58, 6067, 69, 73, 76, 77, 93) are DENIED.

2) Plaintiff's motion for confirmation (dkt. #78) is GRANTED.

3) Plaintiff's motion to correct record (dkt. #95) is GRANTED, insofar as the court considered WSPF-2017-32207 as part of the record for purposes of defendants' motion.

4) Defendants' motion for summary judgment (dkt. #81) is GRANTED, and this case is DISMISSED without prejudice.

Entered this 31st day of July, 2018.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge